UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JUAN C. SANCHEZ,                    :
                                    :
                    Plaintiff,      :
                                    :
        -against-                   :    09 Civ. 7207 (THK)
                                    :
                                    :    **MEMORANDUM OPINION**
ROBERT LITZENBERGER, et al.,        :    **AND ORDER**
                                    :
                                    :
                    Defendants.     :
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Juan Sanchez brings this action against Robert Litzenberger, Amy Litzenberger, and Christopher Palmisano ("Defendants"), seeking monetary compensation for injuries sustained in an automobile accident allegedly caused by Defendants. The Court's jurisdiction is based on the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1). Defendants, who learned during the course of discovery that Plaintiff brought this action using a false name, now move for the dismissal of the action, arguing that Plaintiff's use of a false name constitutes a fraud on the Court and abuse of the discovery process. For the reasons that follow, Defendants' motion is denied.[1]

---

[1] The parties consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

This action arises out of an automobile accident that occurred on August 21, 2008, on the New Jersey side of the upper level of the George Washington Bridge. Plaintiff alleges that he was in the right lane, three or four feet behind another automobile, when his vehicle was struck from behind by an automobile driven by Defendant Palmisano. (See Deposition of Juan Sanchez, dated Jan. 13, 2009, ("Sanchez Dep.") attached as Ex. B to Affirmation of Michael Braverman, dated Aug. 10, 2010 ("Braverman Aff."), at 37, 41.) On June 24, 2009, Plaintiff brought suit in New York State Supreme Court, under the name "Juan C. Sanchez." Defendants served their Answer on August 14, 2009, and simultaneously removed the action to this Court pursuant to 28 U.S.C. § 1441.

On or about September 8, 2009, Plaintiff served a Verified Bill of Particulars, in which he listed his name as "Juan Carlos Sanchez," provided a birth date of November 27, 1977, and offered what he claimed was his Social Security number. (See Verified Bill of Particulars, dated Sept. 8, 2009, at 1.) Plaintiff attested to the truthfulness of the document by signing and swearing to its accuracy before a notary public. (See id. at 8.)

At his deposition on January 13, 2009, Plaintiff testified under oath that his true name was "Juan Sanchez." (See Deposition of Juan Sanchez, dated Jan. 13, 2009 ("Sanchez Jan. 13 Dep."),

attached as Ex. C to Bender Aff., at 4.) When specifically asked if he was known by any other name, Plaintiff replied that the only other name he was known by was "Juan Carlos," Carlos being his middle name. (See id. at 5.)

Defendants' subsequent investigation revealed that a resident of Puerto Rico, named Juan Carlos Sanchez Vargas ("Sanchez Vargas"), shared Plaintiff's birth date and Social Security number. A representative sent by Defendants to Puerto Rico met with Sanchez Vargas, and was provided with copies of Sanchez Vargas's Puerto Rico drivers license and his Social Security card. Sanchez Vargas also signed an affidavit indicating that approximately two-and-a-half years ago, he learned that he had been the victim of identity theft. (See Affidavit of Juan C. Sanchez Vargas, dated July 8, 2010, attached as part of Ex. D to Bender Aff.) Sanchez Vargas stated that he had neither lived in nor visited the City of New York, nor, for that matter, had he visited any State outside of Puerto Rico. (See id.)

Armed with this knowledge, Defendants requested a second deposition of Plaintiff for the limited purpose of exploring the issue of Plaintiff's true identity. At this second deposition, Plaintiff again testified under oath that his true name was "Juan Sanchez." (See Deposition of Juan Sanchez, dated July 22, 2010 ("Sanchez July 22 Dep."), attached as Ex. E to Bender Aff., at 3.)

Plaintiff was also asked about the circumstances surrounding the receipt of his Social Security card, and about the individual in Puerto Rico who shared his name, date of birth, and Social Security number, at which point Plaintiff's attorney directed Plaintiff not to answer the question, and the deposition ended. (See id. at 24-26.)

On October 18, 2010, Plaintiff was arrested by New York City police officers and charged, under the name of "Adalberto Cruz," with Identity Theft in the First Degree (New York Penal Law § 190.80(1)), Forgery in the Second Degree (New York Penal Law § 170.10(3)), Grand Larceny in the Third Degree (New York Penal Law § 155.35), Welfare Fraud in the Third Degree (New York Penal Law § 158.15), and Offering a False Instrument in the Second Degree (New York Penal Law § 175.30). (See Criminal Complaint, dated Oct. 18, 2010, attached as Ex. G to Bender Aff.) The charges against Plaintiff are based upon the use of a false name on an application for medical benefits. At the time of his arrest, Plaintiff made a recorded statement to the police in which he initially stated that his name was Juan Sanchez, but corrected himself to say that his "real name" was "Jose Manuel Torres." (See id.) Further investigation revealed that Plaintiff had a prior criminal conviction in New York under the name Jose Torres, and that three outstanding warrants for Plaintiff's arrest existed in

Massachusetts. (See NYPD Case Overview, attached as Ex. H to Bender Aff.)

On November 1, 2010, Plaintiff replied to a Request for Admission served by Defendants, admitting that his true and legal name is neither Juan C. Sanchez nor Jose M. Torres, but is Adalberto Cruz. (See Request for Admission, attached as Ex. J to Bender Aff.) Plaintiff has, however, used the name "Juan Sanchez" for more than ten years. (See Affirmation of Michael Braverman, dated Jan. 18, 2010 ("Braverman Jan. 18 Aff."), at 10.) According to his attorney, Plaintiff feared that a felony conviction would negatively impact his future, and thus adopted the name "Juan Sanchez" in 1999, following a guilty plea to a charge of Attempted Criminal Sale of Narcotics. (See id. at 11.) Following the assumption of this false identity, Plaintiff went to school, became a union carpenter, and started a family, in each case maintaining the name "Juan Sanchez."

Defendants now move to dismiss Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 37(b) and the Court's inherent equitable powers, as a sanction for Plaintiff's use of a false name in bringing and prosecuting this action.

## DISCUSSION

Defendants maintain that dismissal is warranted here because Plaintiff has committed fraud on the Court by engaging in "a

deliberate scheme to defraud both the defense and the Court" and because Plaintiff "filed false sworn pleadings, perjuriously verified their accuracy, perjured himself in his depositions, and disclosed his identity only after his scheme was exposed." (See Memorandum of Law in Support of Motion for Dismissal of Complaint, dated Nov. 17, 2010 ("Defs.' Mem."), at 2-3.) Defendants also argue that Plaintiff never freely volunteered his name, and that it was only after he was arrested for identity theft that he was forced to reveal the truth. (See id.) Plaintiff responds that dismissal is not warranted here because (1) Plaintiff's name qualified as a true alias, (2) the alias was not used to deceive this Court or Defendants, and (3) Plaintiff ultimately admitted to his deception. (See Plaintiff's Affirmation in Opposition, dated Jan. 18, 2010 ("Pls.' Mem."), at 2.) Plaintiff further contends that Defendants have suffered no prejudice from Plaintiff's misrepresentations. (See id.)

I. Legal Standard

Defendants rely on Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, which provides that '[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . [an] order . . . dismissing the action . . . '" See Fed. R. Civ. P.

37(b)(2)(C). Rule 37 vests a district court with wide discretion in imposing sanctions on a party for its failure to comply fully with its discovery obligations. See Nat'l Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643, 96 S. Ct. 2778, 81 (1976) (per curiam); Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990); Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988). Dismissal with prejudice under Rule 37(b) is appropriate only where a court finds "wilfulness, bad faith, or any fault on the part of [a party]." Bobal, 916 F.2d at 764. However, since there is no court order here that was allegedly violated, Rule 37(b) does not provide a basis for the imposition of sanctions on Plaintiff. See Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986); In re WRT Energy Sec. Litig., 246 F.R.D. 185, 194 (S.D.N.Y. 2007). Nevertheless, [e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage is own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002).

In addition to those powers expressly conferred by rule or statute, courts enjoy the inherent equitable power "to levy sanctions in response to abusive litigation practices." Roadway Express, Inc. v. Piper, 447 U.S. 752, 765, 100 S. Ct. 2455, 2463

(1980); see also Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S. Ct. 2123, 2133 (1991).

> [Courts have] the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants. Indeed, "tampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

Shangold v. The Walt Disney Co., No. 03 Civ. 9522 (WHP), 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246, 64 S. Ct. 997 (1944)). As opposed to a fraud against an adverse party, a fraud upon the court will only be found where the misconduct at issue "seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988). "Perjury alone does not constitute fraud upon the court." Skywark v. Isaacson, No. 96 Civ. 2815 (JFK)(NRB), 1999 WL 1489038, at *14 (S.D.N.Y. Oct. 14, 1999) (Report and Recommendation), adopted at, 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000). Rather, "[i]n order to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's

claim or defense." See Hargove v. Riley, No. CV-04-4587 (DGT), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007).

The imposition of sanctions implicates due process concerns, which are particularly strong when the sanction sought is an outright dismissal. See Roadway Express, 447 U.S. at 767 n.14, 100 S. Ct. at 2464 n.14. Dismissal is a drastic sanction, which should be imposed sparingly. See Nat'l Hockey League, 427 U.S. at 642-43, 96 S. Ct. at 2780-81; Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994) (per curiam) (in considering dismissal pursuant to Rule 37, stating that "[d]ismissal with prejudice is a harsh remedy to be used only in extreme situations . . . .") (internal citations omitted); Civil v. New York City Dep't of Corr., No. 91 Civ. 2946 (SS), 1993 WL 51156, at *2 (S.D.N.Y. Feb. 23, 1993) (same). However, where lesser sanctions would not be meaningful and the plaintiff's misconduct is due to "willfulness, bad faith, or any fault," dismissal of an action is appropriate. National Hockey League, 427 U.S. at 640, 643, 96 S. Ct. at 2779, 2781; accord Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir. 1995).

Courts in this Circuit consider five factors in determining whether to impose the sanction of dismissal:

> (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and

>   (5) whether further misconduct is likely to continue in the future.

Shangold, 2006 WL 72672, at *4 (quoting McMunn, 191 F. Supp. 2d at 446) (internal quotation marks omitted); see also Dodson v. Runyon, 86 F.3d 37, 40 (2d Cir. 1996) (citing factors in Rule 41 context for entry of a default judgment); New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp., Nos. 99 Civ. 2436 & 3581 (DLC), 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000) (citing same factors in Rule 37 context). However, "dismissal is permissible only when the deception relates to matters in controversy in the action, and even then is so harsh a remedy that it should be imposed only in the most extreme circumstances." Bower v. Weisman, 674 F. Supp. 109, 112 (S.D.N.Y. 1987)(citing Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585 (9th Cir. 1983)).

II. Application

Defendants rely heavily on Dotson v. Bravo, 202 F.R.D. 559 (N.D. Ill. 2001), asserting that the Dotson case is directly on point and should be followed by this Court. (See Defs.' Mem. at 18.) In Dotson, the plaintiff sued various police officers and the City of Chicago for malicious prosecution arising out of his arrest and prosecution following an altercation with police. See Dotson, 202 F.R.D. at 561. During the course of the suit, defendants discovered that Dotson had filed the case under a false name, which

-10-

was the same name he had given police at the time of the original arrest upon which his malicious prosecution case was predicated. See id. at 562. The Dotson court noted that the name was not a "true alias" because, other than the plaintiff's initial arrest and subsequent civil lawsuit, there was no evidence that he had ever used or been known by the name "Dotson." See id. Plaintiff's use of an alias in that case, which he adopted solely to conceal his criminal history, directly impacted on the merits of his claims.[2] Doston only revealed his true identity when the court granted the defendants' motion to compel, and even then, only grudgingly. See id. at 568.

Confronted with this record, the Dotson court exercised its inherent power to dismiss the action, finding that the plaintiff "deliberately planned and carefully executed a scheme to deceive state law enforcement and the state judicial machinery, and that he continued the deceit through lies, misrepresentation, and non-disclosure in federal court." Id. at 570. The court further found that the plaintiff "interfered with and obstructed the judicial

---

[2] The Dotson court noted, for example, that "[t]he use of a false name after the commission of a crime is commonly accepted as relevant on the issue of consciousness of guilt." 202 F.R.D. at 563. Any evidence tending to support a plaintiff's guilt of an underlying crime would obviously be relevant to a plaintiff's subsequent claim of malicious prosecution stemming from his initial arrest for that underlying crime.

-11-

process, a process which clearly includes a party's right to full, complete and truthful discovery." Id. at 573.

Here, Plaintiff did not invent a fictitious name solely for the purpose of obstructing the judicial process or interfering with Defendants' right to full, complete, and truthful discovery. Indeed, Plaintiff had used the name Juan Sanchez for at least ten years prior to this suit. Plaintiff's use of an alias is unrelated, or, at worst, only tangentially related to the issues in dispute. For example, there is no question that it was Plaintiff who was actually in the car which was rear-ended by Defendants' car. Defendants have produced no evidence indicating that Plaintiff's admitted deception was designed to frustrate Defendants' discovery of evidence relevant to the merits of the underlying action.[3]

In all material respects, the present case more closely resembles another case arising in the Seventh Circuit, Rodriguez v. City of Highland Park, which distinguished Dotson on the basis that the plaintiff's name in Rodriquez was a true alias, that the plaintiff disclosed his true name during the course of discovery,

---

[3] The Court recognizes, however, that even if Plaintiff's deception was not designed to frustrate Defendants' discovery of relevant evidence, it may nonetheless have had that effect. Accordingly, Defendants are entitled to a remedy for the harm flowing from Plaintiff's deception, the details of which will be discussed infra.

and that the prejudice resulting from the plaintiff's deception was minimal. See Rodriguez v. City of Highland Park, No. 01 C 4486, 2002 WL 31557628, at *3-4 (N.D. Ill. Nov. 15, 2002).

The plaintiff in Rodriguez, whose true name was Abel Reyes, was a Mexican citizen who lived and worked in the United States for several years through the use of counterfeit Social Security and Resident Alien cards bearing the false name "Lorenzo Rodriguez." At some point during that time, Reyes was arrested for speeding, and warned by a judge that continued speeding would result in further arrests. Following this incident, Reyes was again arrested, this time for drunk driving. Fearful that the judge who had cautioned him earlier would now send him to jail, Reyes gave police a false name. Upon discovering this deception, police arrested Reyes for obstruction of justice. This time, Reyes gave police the alias "Lorenzo Rodriguez." See id. at 1.

Approximately two years later, Reyes initiated a civil action against the arresting officers and the City of Highland Park, alleging violations of his constitutional rights. Reyes brought suit using the same alias he gave when he was arrested, and that he had used while living in the United States. During the course of discovery, the defendants discovered Reyes' history of using false names, and moved to dismiss the case. See id. at 2.

The Rodriguez court denied the defendants' motion to dismiss, finding that, as an initial matter, the plaintiff's use of the name Rodriguez qualified as a 'true alias' and, unlike the plaintiff in Dotson, Reyes "did not invent a fictitious name solely for the purpose of deceiving the police or the courts." See id. at 4. Second, Reyes disclosed his true name in response to the defendants' discovery requests and testified about the various names he had used with the police. See id. Finally, prejudice to the defendants was minimal, because they were ultimately provided information concerning Reyes' background and had the opportunity to question him on the issue of his use of aliases. See id. at 5.

In the present case, applying the five factors courts in this Circuit consider in determining whether to impose the sanction of dismissal, the Court cannot say that Plaintiff's deception was the product of intentional bad faith. Plaintiff's use of the name "Juan Sanchez" was not used as part of "a deliberate scheme to defraud both the defense and the Court." Rather, Plaintiff's name is more akin to a "true alias," one which he had adopted and used for a period of nearly ten years prior to the events giving rise to this suit. As such, Plaintiff's use of an alias, though hardly a model of the forthrightness and honesty the Court expects in representations from litigants, is less egregious a misrepresentation than occurred in Dotson, or, indeed, in the

-14-

majority of federal cases where courts have dismissed an action as a consequence of a plaintiff's use of a false name. See e.g., Zocaras v. Castro, 465 F.3d 479 (11th Cir. 2006)(plaintiff filed numerous civil rights actions under false names, and his true name was not discovered until trial); Kings v. Smith, No. 09-cv-2227, 2010 WL 5353345 (C.D. Ill. Dec. 15, 2010)(plaintiff "followed a pattern of deception for years" by "routinely [giving] police officers false names and filing numerous cases in a variety of courts); Wilson-Williams v. Freeman, No. 2:07-CV-480 (MEF), 2010 WL 653873 (M.D. Ala. Feb. 22, 2010)(plaintiff initiated at least twenty federal civil suits using various false identities, in part to avoid application of the "three strikes" provision found in 28 U.S.C. § 1915(g)); Marshall v. Florida Dep't of Corr., No. 4:08-cv-00417 (MP)(WCS), 2009 WL 2351723 (N.D. Fla. July 29, 2009)(plaintiff with a history of bringing patently frivolous claims used false name to avoid three strikes provision); Prince v. Delaware Cnty. Bar Assoc., No. CIV. A. 92-1942, 1993 WL 141711 (E.D. Pa. May 3, 1993)(plaintiff brought multitude of civil rights suits under both his real name and an alias, sometimes suing the same defendants under both names).

Moreover, Defendants have not been materially prejudiced by Plaintiff's use of a false name. Defendants learned of Plaintiff's true name and his other aliases more than three months ago, and

-1-

have had ample opportunity since that time to request additional discovery on the identity issue as it relates to this case, particularly as the Court has yet to even set a trial date. Cf. Rodriguez, 2002 WL 31557628, at *5 (prejudice limited where defendants ultimately obtained information concerning plaintiff's use of various other names and aliases). The necessity of conducting additional depositions, without more, does not constitute prejudice. See Bower, 674 F. Supp. at 112; cf. Morris v. McMaster-Carr Supply Co., No. 01 C 6349, 2002 WL 1290390, at *3 (N.D. Ill. June 10, 2002)(increased costs occasioned by party's misrepresentation insufficient prejudice to mandate dismissal of case).

In addition, there is no evidence whatsoever that Plaintiff provided false testimony as to any fact other than as to his name, nor is there any suggestion that Plaintiff has engaged in any other misconduct in this proceeding, or that he is likely to engage in any misconduct in the future.

Finally, although Plaintiff did ultimately correct his initial misrepresentation, he was not quick to do so, and this the Court finds troubling. Plaintiff maintained his deception over the course of two depositions. At the second deposition, when confronted directly with questions about his identity, Plaintiff's attorney abruptly ended the deposition, and Defendants then had to

wait until Plaintiff was arrested for identity theft before receiving from Plaintiff a frank admission as to his multiple identities. As recognized in Dotson, "[h]ad [plaintiff] disclosed his true identity at the first reasonable opportunity in the federal proceedings, the charges of fraud now leveled against him would have less force." Dotson, 202 F.R.D. at 564; see also Miller, 1999 WL 415397, at *10 (denying motion to dismiss where plaintiff had filed suit under an alias but later testified about his true identity during his deposition); Morris, 2002 WL 1290390, at *3 (denying motion to dismiss where plaintiff supplied false information, in part because plaintiff "did come clean at his deposition").

Considering the relevant factors as a whole, however, and given that Plaintiff did ultimately provide information regarding his identity in response to Defendants' Request for Admission, the Court concludes that dismissal is not an appropriate sanction for Plaintiff's misconduct. This is particularly true where, as here, Plaintiff's misrepresentation related to a matter beyond the substantive issues directly before the Court. See Skywark, 1999 WL 1489038, at *15 ("in weighing the entry of judgment for fraud on

the court, courts within the Second Circuit have considered whether the misconduct at issue was central to the case").[4]

Nevertheless, Plaintiff's misrepresentations do warrant some sanction. Defendants have expended resources in uncovering Plaintiff's identity, and should be made whole. Accordingly, Plaintiff will be required to pay to Defendants an amount equal to the costs, expenses, and attorney's fees associated with the investigation, additional depositions, and other actions directly taken to uncover Plaintiff's deception. See Fed. R. Civ. P. 37(b)(2)(C); Bower, 674 F. Supp. at 112; Morris, 2002 WL 1290390 at *10.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied. Defendants' motion for sanctions is denied insofar as it seeks dismissal and is granted to the extent that Plaintiff will be required to reimburse Defendants for the expenses and fees incurred in rooting out Plaintiff's true identity.

---

[4] The Skywark court noted that, when considering the sanction of dismissal, courts in other circuits also emphasize the centrality of the misconduct to the matters in controversy. See Skywark, 1999 WL 1489038, at *15, n.28 (citing Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1120, n.3 (1st Cir. 1989)).

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: February 24, 2011
       New York, New York